AMCO MESH & WIRE CO., Appellant,

v.

David A. ANDREWS and Weld-Mor Machines and Equipment, Inc., Appellees.

No. 15813.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 4, 1971.

——————◆——————

Daniel O. Newsom, Houston, for appellant.

Liddell, Sapp, Zivley & Brown, John C. Nabors, Houston, for appellees.

PEDEN, Justice.

Appeal from the granting of a temporary injunction in a trade secrets case. The appellant contends that the trial court failed to grant all the relief to which it was entitled.

The appellant's points of error were that the trial court abused its discretion 1) by failing to apply the law to the established facts in granting a temporary injunction which only partially enjoined the duplication and disclosure of the appellant's mechanism and 2) by refusing to grant a complete temporary injunction to preserve the status quo, because if its decision was based upon a finding that to preserve the status quo appellees were entitled to continue construction of two welded wire mesh machine feed mechanisms identical to the appellant's mechanism and retain all plans, documents and instruments pertaining to them, such finding was so against the great weight of the evidence as to be clearly wrong.

In its original petition Amco alleged that it is engaged in the production of welded wire mesh, which is used as reinforcing in concrete. That Amco uses machines and equipment containing features designed and built by and for it, which are not available on machines sold to the general public but are unique trade secrets of Amco, and are known only to its officers, agents and employees. That Amco owns all the rights to a mechanism described as a welded wire mesh machine, improved feed mechanism and specification control system, having invented, developed and built it. The mechanism greatly increased and improved Amco's production of welded mesh.

That Amco employed Weld-Mor and its president, David Andrews, in confidence to fabricate certain parts of the mechanism and furnished him the plans and specifications of the mechanism; he agreed to protect such trade secrets. This gave rise to a fiduciary relationship between the plaintiff and the defendants, and all information gained by the defendants about the mechanism was obtained as a result of Amco's confidential disclosures. That any disclosure would be a breach of the fiduciary relationship and unfair competition. Amco alleged that the defendants were, when the petition was filed, then making a mechanism so similar to theirs as to be an appropriation of it, and that they were

threatening to continue the making and sale of such mechanism unless enjoined from doing so, to Amco's damage exceeding $50,000. That the fiduciary relationship will continue to be violated and trade secrets will be revealed to Amco's irreparable injury for which it has no adequate remedy at law.

The temporary relief sought by the plaintiff was that the defendants be temporarily enjoined from 1) divulging the plans, construction or operation of plaintiff's mechanism, 2) assembling, constructing, selling and distributing it; also 3) that an order be issued commanding defendants to surrender to the plaintiff all of plaintiff's plans, specifications or other instruments in their possession or under their control and 4) commanding that there be placed under seal in the court during the pendency of the suit a) all plans and specifications used by defendants to construct any type of welded mesh machine, b) all documents dealing with the manufacture or sale of any such mechanisms by defendants and c) all records giving names and addresses of persons who have worked on such mechanisms for Weld-Mor or have viewed plans and specifications used by Weld-Mor in constructing them.

The petition contained a prayer that the temporary injunction be made permanent on final trial and asked for actual and exemplary money damages.

After a hearing on the application for temporary injunction, an order was entered May 4, 1971. How the hearing was terminated is not clear from the record. Neither side announced in the record that it rested, and the last event reflected in the statement of facts was the calling of a recess. The appellant does not complain that it was prevented from offering any of its evidence. The record does not contain findings of fact or conclusions of law aside from those stated in the order.

The trial court's order contained these recitals:

" . . . the Court proceeded to hear the evidence and arguments of counsel, and at the conclusion of said hearing, the Judge being of the opinion Defendants David A. Andrews and Weld-Mor Machines & Equipment, Inc. should not be enjoined from completing the two (2) welded mesh feed mechanisms and specification control systems now under construction in their plant, but that a fact issue exists whether Defendants have violated Plaintiff's trade secrets and that Plaintiff may suffer irreparable injury unless Defendants are enjoined pending trial on the merits from constructing welded mesh feed mechanisms and specification control systems similar to Plaintiff's machines, and probable cause exists for the issuance of an injunction enjoining Defendants David A. Andrews and Weld-Mor Machines & Equipment, Inc. from constructing welded mesh feed mechanisms and specification control systems similar to those used in the machines of Plaintiff Amco Mesh & Wire Company, pending trial on the merits of this cause, and prohibiting Defendants David A. Andrews and Weld-Mor Machines & Equipment, Inc. from furnishing, displaying, publicizing or in any manner divulging the plans, blueprints, instructions, construction, or operation of Plaintiff's welded mesh feed mechanisms and specification control systems pending trial on the merits of this cause.

"IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that Defendants David A. Andrews and Weld-Mor Machines & Equipment, Inc. may construct the two welded mesh feed mechanisms and specification control systems now under construction in their plant, but pending trial on the merits of this cause Defendants shall not construct welded mesh feed mechanisms and specification control systems for any other wire mesh machine similar to the welded mesh feed mechanisms and specification control systems used in the welded mesh

machines of Plaintiff Amco Mesh & Wire Company;

"IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendants be and are enjoined, pending trial on the merits of this cause from furnishing, displaying, publicizing or in any manner divulging plans, blueprints, instructions, construction or operation of Plaintiff, Amco Mesh & Wire Company's welded mesh feed mechanism and specification control systems."

Appellant's complaint is directed, in the main, to this order's permitting the defendants to complete construction of the two mechanisms on which they were already working and to retain possession of all documents, plans and instruments pertaining to them.

Mr. Wm. Schindler, president of Amco, testified that Amco's feed mechanism in question was developed by its employees over a period of three years at a cost of about $150,000 to increase both the quality and the amount of the welded wire mesh produced by its machines. It was first worked out for Amco's No. 5 mesh machine. Later, plans and specifications were prepared and submitted to three companies for bids on fabrication of such mechanisms for Amco's other four machines, and Weld-Mor was the low bidder. Weld-Mor built the mechanisms in 1970, and they have been installed in Amco's machines. That he knows of four companies that build welded mesh machines, but he did not know of any that produced a mechanism similar to the one Amco designed.

He testified that when a machine shop is furnished drawings bearing a company's name, the shop isn't supposed to divulge the information or make the piece of machinery for anyone else. When asked whether Weld-Mor had returned Amco's plans and specifications after finishing the job, Schindler replied "Not to my knowledge, no."

He testified that early in 1971 he understood that Weld-Mor was building some welded mesh machines of a type being built by the Davis Co. and that Weld-Mor was going to sell them on the market. That by examination of some of the drawings Amco found that Weld-Mor had a chain mechanism to be installed on their machines. That he had assumed that Weld-Mor wouldn't use the chain mechanism when it was agreed that they wouldn't build this machine for some other company.

Schindler admitted on cross-examination that he didn't know whether Weld-Mor had a set of Amco's plans for the mechanism or not and that his information was based on what Mr. Kainer, his superintendent, had told him. That he has not been told by anyone at Weld-Mor what features their machine has. That the power system on Weld-Mor's mechanism is different from Amco's but that its chain, sprocket and cog system compare with Amco's. Amco's No. 5 is cam-driven, while others are powered by a hydraulic system. That Amco is still working on its mechanism and was doing so only a week ago, trying to get it back into production.

That not all of Amco's employees have been told the machines were secret and that Amco's suppliers were not told so. He also testified that he did not know whether eight other companies make welded mesh machines equipped with chain pull systems.

That Doug Stewart was Amco's general manager until August of 1970. He understands Stewart is trying to get into the mesh business, but doesn't know Weld-Mor is building the two machines in question for him. If Doug Stewart goes into competition, this shouldn't damage Amco's business, but Weld-Mor's using Amco's idea for parts of the equipment would.

"Q. But you stated the person he is going to sell the machines to, their business is not going to hurt you, is that right?"

"A. This may be true, but is this the only person that he is going to sell

machines to or is he going to get in the general machine business as he claims he is in?"

He added that if his mechanism is divulged to other people by Weld-Mor, the effect this would have on his business would be that he would have spent $150,000 for nothing; that instead of spending it for himself he would have spent it for somebody that sells it to anyone that wants a machine.

The other two witnesses who testified at the hearing were Donald Washburn, an engineer employed by Schindler Bros. Steel Co. who designed the mechanism for Mr. Schindler, and Lawrence Kainer, plant superintendent for Amco. Both were called as witnesses by Amco.

Kainer testified that he delivered detailed plans of the mechanism to Weld-Mor so it could bid on the job and, later, fabricate four of the mechanisms. A year after the last of them was delivered to Amco, he saw a mechanism being built at Weld-Mor that was identical to Amco's except for minor design changes. He later testified that he just walked into the Weld-Mor shop, saw Dave Andrews up front, walked up front to give him his check and wasn't in there over a minute. That the mechanism wasn't yet completed and he saw parts of it all over the shop. He didn't inspect the unit, but it was similar to the ones Weld-Mor built for Amco.

In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (1953); Sun Oil Co. v. Whitaker, 424 S.W.2d 216 (Tex.Sup. 1968).

Mr. Schindler was the only witness who testified concerning probable injury to Amco. As the applicant for a temporary injunction, Amco had the burden of proof to establish its right to relief. Can we say that the trial judge abused his discretion if, as we presume in support of his temporary injunction order, Amco failed to convince him that it would probably be injured if Weld-Mor was allowed to complete the two mechanisms already under construction but did convince him that Amco would probably be injured if Weld-Mor was permitted to build more of the mechanisms, pendente lite, in fabricating and selling mesh welding machines on a large scale? We hold that we cannot say he abused his discretion.

Further, it appears that as to Amco's appeal from the trial court's refusal to enjoin completion by Weld-Mor of the two mechanisms it had under construction, the matter has become moot. Appellee has filed an affidavit alleging that the two mechanisms have been completed and delivered: the first on May 13, 1971 and the second on August 12, 1971. Appellant's unsworn reply to appellees' affidavit and motion to dismiss this appeal does not deny that the two mechanisms have been delivered but does assert on information and belief that appellees are still working on them.

Rule 406, Texas Rules of Civil Procedure, provides that motions made to sustain or defeat the jurisdiction of the court, dependent on facts not apparent in the record and not ex officio known to the court, must be supported by affidavits or other satisfactory evidence. Since the existence of an actual controversy is essential to an exercise of appellate jurisdiction, we may consider the affidavit filed by the appellees. Lowe and Archer, Texas Practice 380, § 361 (1957).

258

We hold that the appellant's unverified reply to this motion and affidavit does not traverse appellees' allegation and that the appeal from this part of the trial court's order has become moot. See Guerra v. McClellan, 243 S.W.2d 715 (Tex.Civ.App. 1951, mand. overr.).

As to the other temporary relief denied to appellant in the trial court, we hold that no abuse of discretion has been shown in the trial court's having temporarily enjoined the defendants from furnishing, displaying, publicizing or in any manner divulging plans, blueprints, instructions, construction or operation of Amco's mechanism rather than requiring that all plans, documents, etc. used by Weld-Mor to construct mechanisms be deposited under seal in the court during the pendency of the suit. It would be more appropriate to use discovery measures to obtain the names of those who viewed the mechanisms or worked on them for Weld-Mor than by mandatory injunction, particularly where probable injury in this regard has not been shown.

We overrule appellees' motion to dismiss the appeal.

We affirm the order of the trial court.