Sheila YARBROUGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00066–CR.

Court of Appeals of Texas, Texarkana.

Submitted April 5, 2001.

Decided Oct. 2, 2001.

Brian W. Wice, Houston, for appellant.

Peter C. Speers III, District Attorney, Gail Kikawa McConnell, Assistant District Attorney–Appellate Section, Conroe, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Sheila Yarbrough appeals from her conviction for aggravated robbery and aggravated kidnapping.

Yarbrough was indicted on a two-count indictment for the offenses of aggravated robbery and aggravated kidnapping. The indictment also alleged in two enhancement paragraphs that she had previously been convicted of two felony offenses, failure to stop and render aid, and robbery. A jury found her guilty of both counts in the indictment.

Yarbrough elected to have the trial court assess punishment and timely requested preparation of a presentence investigation (PSI) report. The court refused her request for a PSI report and proceeded to hold a full punishment hearing. At the end of the hearing, the court found the enhancement paragraphs true and sentenced Yarbrough to thirty-five years' imprisonment for aggravated kidnapping and twenty-five years' imprisonment for aggravated robbery, to run concurrently.

Yarbrough filed a timely Motion for New Trial, which was overruled by operation of law.

Yarbrough contends on appeal (1) that she was denied effective assistance of counsel at a critical stage of trial, precluding her from raising the meritorious claims of ineffective assistance of counsel and newly discovered evidence, and (2) that the trial court erred in failing to order a PSI report despite her timely request that one be prepared.

In two points of error, Yarbrough contends she was denied effective assistance of counsel in connection with the filing of her Motion for New Trial, a critical stage of the proceedings, and was thereby precluded from asserting on appeal her meritorious claims of ineffective assistance of counsel at trial and newly discovered evidence. We have twice refused Yarbrough's contention that she was denied effective assistance of counsel in connection with the filing of her Motion for New Trial, once in an order on Yarbrough's Motion to Abate her appeal and again in our overruling of her Motion to Reconsider.

The record shows that Yarbrough was first represented by Stephen Jackson. Because no order appointing counsel appears in the record, we assume that Jackson was retained. After filing several pretrial motions, Jackson's Motion to Withdraw as Counsel was granted and attorney James Jones was substituted. Jackson's motion indicates that Yarbrough retained Jones to represent her. Yarbrough was sentenced on January 20, 2000. On February 11, 2000, Jones filed a Motion for New Trial on Yarbrough's behalf alleging only that the verdict was contrary to the law and the evidence. On February 15, 2000, Yarbrough filed a pro se Notice of Appeal, a Motion for a Free Reporter's Record on Appeal, and an Affidavit of Indigency and Motion for Appointed Appellate Counsel.[1] On February 18, 2000, the trial court signed an order appointing attorney Mark Fernandez as Yarbrough's appellate counsel.

Yarbrough, acting pro se, filed two affidavits with the trial court on April 3, 2000, along with a letter stating the affidavits were offered in support of her Motion for New Trial. On April 4, 2000, Yarbrough filed a motion seeking to substitute Brian

---

1. The similarity of the printing on the Notice of Appeal and the Motion for a Free Reporter's Record to previous documents filed in this case indicates that Jones prepared those documents, even though only Yarbrough's signature appears on them.

Wice for Fernandez as her appellate counsel. That motion was granted by order of this court dated April 11, 2000.

■■■ To demonstrate ineffective assistance of counsel under the state and federal Constitutions, a two-pronged analysis is employed: 1) an appellant must show that counsel's performance was deficient, i.e., that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment to the United States Constitution; and 2) the appellant must show that the deficient performance prejudiced the defense, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting *Strickland* as the appropriate standard under the Texas Constitution).

■■■ A claim of ineffective assistance of counsel is, in most instances, not normally cognizable on direct appeal, because the record does not generally reflect the failings of trial counsel. *Oldham v. State,* 977 S.W.2d 354, 360 (Tex.Crim.App.1998), *cert. denied,* 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 116 (1999). The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case, and any such allegation must be firmly founded in the record. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

This court has held the statutory time period for filing a motion for new trial is a critical stage of the proceedings during which a criminal defendant is constitutionally entitled to assistance of counsel. *Prudhomme v. State,* 28 S.W.3d 114, 119 (Tex.App.—Texarkana 2000, order). This holding is consistent with that of other courts of appeals.[2] *See Hanson v. State,* 11 S.W.3d 285, 288 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Massingill v. State,* 8 S.W.3d 733, 736 (Tex.App.—Austin 1999, no pet.).

In *Prudhomme,* we also recognized that where the record shows trial counsel did not withdraw from the case or was replaced by new counsel after sentencing, there is a rebuttable presumption that trial counsel continued to effectively represent the defendant during the time limit for filing a motion for new trial. *Prudhomme,* 28 S.W.3d at 119. Yarbrough relies heavily on *Prudhomme,* where the record demonstrated that the presumption had been rebutted.

There, the record showed that even though no motion to withdraw had been filed by trial counsel, twenty-five days after imposition of sentence Prudhomme filed a pro se Notice of Appeal, a Motion to Substitute Appellate Counsel—with no alternative counsel being named, and a motion seeking to withdraw his guilty plea, alleging it was involuntary due to the ineffective assistance of counsel. We regarded the motion seeking to withdraw the plea as having the same effect as a motion for new trial on the ground of ineffective assistance of counsel. This motion was never presented to the trial court for a hearing. We held that these filings rebutted the presumption that Prudhomme was effec-

---

2. The Texas Court of Criminal Appeals has specifically refused to rule on this point. *Smith v. State,* 17 S.W.3d 660, 663 n. 3 (Tex. Crim.App.2000); *Oldham v. State,* 977 S.W.2d 354, 360–61 (Tex.Crim.App.1998), *cert. denied,* 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 116 (1999).

tively represented by counsel during the thirty-day critical time period and that this deprivation constituted a violation of Prudhomme's right to counsel under the United States and Texas Constitutions. *Id.* at 120. Our remedy in *Prudhomme* was to abate the appeal and remand the cause to the trial court to the point at which a motion for new trial could be filed. *Id.* at 121.

■ Yarbrough contends that she rebutted the above-mentioned presumptions with the affidavits attached to her Motion to Abate filed with this court. But these affidavits were not before the trial court. As we held in our previous order on this matter, we are not permitted to consider affidavits that were not before the trial court. Yarbrough again urges that *Bloom v. Bloom,* 935 S.W.2d 942 (Tex.App.—San Antonio 1996, no writ); *Glass v. Sponsel,* 916 S.W.2d 25 (Tex.App.—Houston [1st Dist.] 1995, no writ); and *Aycock v. Pannill,* 853 S.W.2d 161 (Tex.App.—Eastland 1993, writ denied) (op. on reh'g), support her contention that former Tex.R.App. P. 19(d) (Vernon 1997)[3] permits us to consider extra-record affidavits. But those cases are easily distinguished on the ground that the affidavits in issue were offered in support of an attack on the jurisdiction of the court to hear the appeal.

■ An appellate court has the obligation to determine its own jurisdiction. *Glass,* 916 S.W.2d at 26. In *Glass,* the extra-record affidavits were offered in support of a Motion to Dismiss on the ground the appellant had failed to invoke the court's jurisdiction by timely filing the transcript. *Id.* In *Bloom* and *Aycock,* the extra-record affidavits were offered in sup-

port of Motions to Dismiss on the ground the courts lacked jurisdiction because the appellants had voluntarily accepted the benefits of the judgments.[4] *Bloom,* 935 S.W.2d at 946; *Aycock,* 853 S.W.2d at 164. In a more recent case, the court considered affidavits attached to a Motion to Dismiss on the ground the appellant failed to invoke the jurisdiction of the court by timely filing a perfecting instrument. *Flores v. Citizens State Bank of Roma,* 954 S.W.2d 78, 79 (Tex.App.—San Antonio 1997, no pet.) (per curiam); *see also Jones v. Griege,* 803 S.W.2d 486, 488–89 (Tex.App.—Dallas 1991, no writ) (court considered affidavits that were not part of the record to determine trial court's judgment was final, establishing appellate court's jurisdiction); *Amco Mesh & Wire Co. v. Andrews,* 474 S.W.2d 253, 257 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ) (court considered affidavits that were not part of the record to determine matter in controversy was moot, preventing appellate court from exercising jurisdiction).

All of these cases rely on either former Texas Rule of Appellate Procedure 19(d) or Section 22.220(c) of the Texas Government Code, or a combination of the two, to find that an appellate court may consider extra-record materials to determine its jurisdiction over an appeal. *See* Tex.R.App. P. 19(d) (Vernon 1997); Tex. Gov't Code Ann. § 22.220(c) (Vernon 1988). Texas Rule of Appellate Procedure 19(d), now Rule 10.2, provides a motion need only be verified if it relies on facts that are not in the record, that the court would not otherwise know, or that are not within the personal knowledge of the attorney signing the motion. *See* Tex.R.App. P. 10.2. Sec-

---

3. Current version of Rule 19(d) found at Tex. R.App. P. 10.2.

4. The motions were based on the acceptance-of-benefits doctrine, an estoppel-based princi-

ple that prevents a party who has voluntarily accepted the benefits of a judgment from simultaneously attacking the same judgment on appeal.

tion 22.220(c) provides that a court of appeals may, by affidavit or otherwise, ascertain the matters of fact necessary to the proper exercise of its jurisdiction. Tex. Gov't Code Ann. § 22.220(c). This line of case law addresses *only* jurisdictional issues and is inapposite to the case at hand; Yarbrough asks us to consider these affidavits for the purpose of deciding a *substantive* claim of error in the trial court.

Yarbrough directs us to a recent decision of the First Court of Appeals, wherein that court considered as part of the record a defendant's affidavit that was attached to a motion made by appellate counsel. *Jack v. State*, 42 S.W.3d 291, 293 (Tex.App.—Houston [1st Dist.] 2001, order). But that court failed completely to address the implications of Tex.R.App. P. 34.1, which states that an appellate record is comprised of "the clerk's record and, if necessary to the appeal, the reporter's record." It is elementary that we are precluded from considering materials outside the appellate record. *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840 (Tex.1979); *In re Marriage of Murray*, 15 S.W.3d 202, 204 n. 3 (Tex.App.—Texarkana 2000, no pet.). Affidavits attached to Yarbrough's Motion to Abate filed with this court are neither part of the clerk's record nor part of the reporter's record. Therefore, in accordance with Rule 34.1, those affidavits are not part of the appellate record and cannot be considered by us. *See also, James v. State*, 997 S.W.2d 898, 901 n. 5 (Tex.App.—Beaumont 1999, no pet.) (stating that an appellate court may not consider documents attached as appendices to motions).

■ Based on our examination of the trial record, we cannot find that the presumption of effective assistance of counsel during the critical thirty-day period has been rebutted. Like *Prudhomme*, the record does not contain a withdrawal by trial counsel. But unlike *Prudhomme*, Yarbrough's trial counsel did, on the twenty-second day after imposition of sentence, file a Motion for New Trial. This is a factor distinguishing Yarbrough's case from *Prudhomme*, where the defendant's counsel—if any—took no further action following imposition of sentence. The fact that the motion in Yarbrough's case was not presented to the trial court for a hearing within ten days, as required by Tex. R.App. P. 21.6, is not indicative of ineffective assistance of counsel because the motion did not present any allegations requiring an evidentiary hearing. Yarbrough contends the Motion for New Trial is "not worth the paper it is written on." But it is well recognized that a motion for new trial is sometimes used to extend the appellate timetable. *See Oldham*, 977 S.W.2d at 361.

Another factor distinguishing this case from *Prudhomme* is that in *Prudhomme*, ineffective assistance of counsel was raised by the defendant in the trial court. In the present case, ineffective assistance of counsel was not raised until the appellate stage. As we pointed out in *Prudhomme*, an allegation by trial counsel of ineffective assistance of counsel at trial may present a conflict of interest. *Prudhomme*, 28 S.W.3d at 120.

We concede that the fact that new counsel, Fernandez, was appointed on the twenty-ninth day after sentencing, together with the record's lack of indication that Fernandez was notified of the appointment before the thirtieth day had run, may not on its face be considered effective representation. This does not represent adequate time to obtain and examine the trial record, to research and prepare possible amendments to the Motion for New Trial that had been filed, or even to be made aware of the appointment.

As requested by Yarbrough, Fernandez was appointed only as appellate counsel. Jones never withdrew as counsel, filed a Motion for New Trial, and as far as the record reflects, served during the thirty-day period in question. Jones was retained counsel, and was counsel of record until Yarbrough requested and received appointment of appellate counsel. Thus, Yarbrough did not meet her burden to demonstrate from the record that she was unrepresented or ineffectively represented during the thirty-day period in question. There was also no showing that Yarbrough was dissatisfied with her trial counsel's performance during this period. Her basis for requesting the new counsel for appeal was that she had exhausted her financial resources and no longer could retain counsel.

The First Court of Appeals, in *Jack v. State*, provided an excellent commentary on the need for abatement in cases such as this to preserve judicial resources. *See Jack*, 42 S.W.3d at 292–93. However, such a holding here would set a precedent for abating every case in which ineffective assistance of counsel is argued on appeal and the matter has not been developed at a hearing on the motion for new trial.

The Court of Criminal Appeals determined in *Oldham* that abating appeals to allow out-of-time motions for new trial was not an effective way of expediting the appellate process. *Oldham,* 977 S.W.2d at 360. The court quoted *Torres,* where it said, "we are not disposed to encourage a practice of disrupting the orderly and prompt flow of direct appeals by what could well become a routine defense practice of seeking abatement for random trolling of the record for signs of ineffective assistance." *Id.* (citing *Torres v. State,* 804 S.W.2d 918, 920 (Tex.App.—El Paso 1990, writ ref'd)). The Court of Criminal Appeals strongly urges in the *Oldham*

opinion that the record is generally not developed adequately on ineffective assistance of counsel claims in most cases, and for that reason such a claim may be raised on habeas corpus even after rejection on appeal.

Yarbrough also contends the trial record alone is sufficient to rebut the presumption that she was effectively represented by counsel during the critical thirty-day period for filing a motion for new trial. According to her argument, the record is so replete with instances of blatant errors made by trial counsel that appellate counsel was *de jure* ineffective for failure to pursue the obvious and meritorious ineffective assistance of trial counsel claim in a motion for new trial. But ineffective assistance of counsel claims are very rarely, if ever, as obvious as Yarbrough suggests. Yarbrough does not suggest, however, that the alleged errors by counsel during trial on their face are a bases for reversal of this cause, but rather contends that these errors reflect a need for this matter to have been raised in the motion for new trial and for a record to have been developed by a hearing at that phase of the trial. As we have previously stated, the Court of Criminal Appeals has determined that when such matters are not properly preserved, they are better developed in a habeas corpus proceeding.

Under this point of error, Yarbrough also contends that appellate counsel was ineffective for failure to allege newly discovered evidence in a motion for new trial. She relies on *Whitmore* to assert that the testimony of her co-defendant, who asserted his Fifth Amendment right not to testify but has since been convicted, is newly discovered or newly available evidence because he is now willing to testify. *Whitmore v. State,* 570 S.W.2d 889, 896 (Tex. Crim.App.1976). But *Whitmore* has been substantially limited by a later Court of

Criminal Appeals case, *Drew v. State*, 743 S.W.2d 207, 225 (Tex.Crim.App.1987).

In the *Drew* case, Drew's co-defendant asserted his Fifth Amendment right not to testify at trial. After Drew's trial, the co-defendant was convicted and was therefore newly available to testify for Drew. Drew's co-defendant even executed an affidavit averring that Drew did not participate in the crime. Yarbrough's co-defendant has executed a similar affidavit. Drew's co-defendant offered to testify to Drew's innocence at a second trial. Yarbrough's co-defendant made the same offer.

■ But, the Court of Criminal Appeals held that among the requirements for obtaining a new trial on newly available or newly discovered evidence is the requirement that the newly discovered evidence be unknown to the movant at the time of the movant's trial. *Id.* at 226. In Drew's case, the Court of Criminal Appeals held that the matter of Drew's nonparticipation was certainly known to Drew at the time of trial. In essence, because the potential testimony of Drew's co-defendant did not address relevant facts to which Drew was not privy at the time of trial, the evidence was not newly discovered or newly available evidence. *Id.* at 227. Similarly, Yarbrough's co-defendant seeks to testify that Yarbrough did not participate in the crime.

Thus, the Yarbrough situation is the same as that of *Drew* and does not raise facts of which Yarbrough was unaware of at the time of trial. Being required to follow the most recent decision of the Court of Criminal Appeals[5] directly on point in this matter we find that, the proposed evidence does not qualify as newly discovered or newly available evidence. This point is overruled.

■ In her last point of error, Yarbrough contends the trial court erred in failing to order a PSI report. A trial court is required to order a PSI report in a felony case when the defendant so requests, even when the defendant is not eligible for community supervision. *Whitelaw v. State*, 29 S.W.3d 129, 132–33 (Tex. Crim.App.2000) (interpreting Tex.Code Crim. Proc. Ann. art. 42.12, § 9 (Vernon Supp.2001)). Yarbrough properly requested a PSI report, and the trial court erred in refusing that request.

■ Yarbrough contends we must vacate her sentence and remand the cause to the trial court so a PSI report can be prepared. It is true the trial court erred, but contrary to Yarbrough's contention, our analysis does not end here. No error is categorically immune to harmless error

---

**5.** This footnote expresses only the view of Justice Ben Z. Grant. It is difficult to understand why the same rules are applicable to newly discovered and newly available evidence under the first requirement. It does not matter if newly available evidence was known at the trial, because just because it is known to a defendant does not mean that he or she has an opportunity to present this evidence to the jury. If the evidence is not accessible, it cannot be used on the defendant's behalf. In *Drew v. State*, 743 S.W.2d 207 (Tex.Crim.App.1987), the Court of Criminal Appeals's conclusion that it was excluded because the defendant knew that he did not participate in the crime should not be the standard. If knowledge of the evidence is important, then it should be knowledge as to what the unavailable witness would testify to, not the knowledge of the defendant's participation or awareness of what happened. To simply say that the defendant could testify to his involvement and what occurred fails to recognize that a defendant's testimony is often considered as self-serving, and his exercising of his right not to testify may be strategically done for the purpose of excluding prior offenses or for other reasons. Even if the co-defendant's potential testimony addressed relevant facts of which the defendant is aware, the defendant should not be denied the opportunity to present such newly available evidence.

analysis except certain constitutional errors labeled by the Supreme Court as "structural." *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997). Moreover, the Court of Criminal Appeals approved the application of harmless error analysis to situations such as this when it stated in *Whitelaw,* "[t]he fact that the defendant had a full punishment hearing may well impact whether [failure to order a properly requested PSI report] is harmless. . . ." *Whitelaw,* 29 S.W.3d at 132. Notwithstanding, Yarbrough has made no argument to this court as to any harm she suffered as a result of the trial court's error.

▆▆▆ Pursuant to harmless error standards, we disregard an error that does not affect Yarbrough's substantial rights. TEX.R.APP. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). In assessing the impact the error may have had on the punishment decision, we consider the entire record, the nature of the evidence supporting the punishment decision, the character of the error, and how it might be considered in connection with other evidence in the case. *See Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). Although the Texas Court of Criminal Appeals has emphasized that when there has been a breach of a procedural statute the record will often contain no concrete data from which an appellate court can meaningfully gauge the likelihood that error did or did not contribute to the punishment, we do not find that to be the case here. *See Sodipo v. State,* 815 S.W.2d 551, 554 (Tex.Crim.App.1990).

▆▆▆ The purpose of a PSI report is to provide the trial court with information regarding "the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the judge." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 9(a). The only conceivable harm to Yarbrough that could result from the trial court's refusal to order a PSI report would be her inability to call the judge's attention to favorable information about her character or social history that could potentially contribute to a lenient sentence.

But Yarbrough had a full punishment hearing at which she availed herself of the opportunity to introduce evidence, none of which was refused by the trial court. She testified, as did family members and her ex-husband. These testimonies intended to show that she had led a generally responsible life, had successfully completed her previous parole for another felony offense, had not harmed others in the past, and had a network of financial and moral support awaiting her on her release from prison.

The trial court also had before it potentially mitigating evidence introduced during the guilt/innocence phase of trial, evidence that tended to bring to light her education and job skills, her prior ownership and operation of a business, her previous impressive work performance, her dedication to raising a child not her own, her exemplary performance as a mother to her three small children prior to falling into alcohol and drug addiction, and her resort to drugs and alcohol after losing her job when her employer discovered she had been previously convicted of a felony.

Despite this favorable evidence, the trial court found the facts of the case particularly compelling and had some harsh words for Yarbrough when announcing the sentence:

The shock and terror that [the victim] must have felt at the moment that you began taping her and abducting her and placing her in the trunk, knowing that her life possibly was about to end, is hardly conceivable. I don't think anybody in this courtroom can conceive of that and understand it. I don't think even you can.

The Court takes special note that you have children that are still of a tender age that probably will look on this some day and wonder if justice was done. Your children need to know that drugs—drug use and crimes that violate the innocence of other people are not to be tolerated. What truly stands out to this Court is the evil that you've exhibited during the commission of this crime. That evil is surpassed only by your incredible lack of remorse until a guilty verdict came down. And that remorse seems to be for yourself. . . .

We also observe that Yarbrough voiced no objection to the trial court's decision to proceed with the punishment hearing, rather than order the preparation of a PSI report. She made no objection or assertion that she was prevented from presenting any additional information or witnesses. Indeed, error was only preserved on this point by the *State's* assertion on the record that defense counsel had requested preparation of a PSI report, to which the trial court responded the request would be denied. Error is preserved for our review because the State's comment placed the trial court on notice of defense counsel's request at a time when the trial court was in a position to do something about it. *Lankston v. State*,

827 S.W.2d 907, 909 (Tex.Crim.App.1992). And Yarbrough does not now argue to this court that there was any other evidence or information of which the trial court should have been aware in imposing her sentence. Considering the trial court's error in connection with the evidence in the case, there was no showing that Yarbrough's substantial rights were harmed by the trial court's failure to order the requested PSI report. Yarbrough's final point of error is overruled.

The judgment of the trial court is affirmed.