

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00322-CR
No. 02-23-00323-CR

———————————————

Ex parte Jason Neal Delong

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F21-1211-462, F21-1212-462

Before Kerr, Birdwell, and Wallach, JJ.
Opinion by Justice Wallach

# OPINION

Appellant Jason Neal Delong appeals from the trial court's denial of his pretrial application for habeas relief. Delong sought release on a personal bond because, he alleged, he was not receiving adequate medical care in the Denton County Jail. The trial court denied the application without first considering a public safety report. *See* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.022. Because the record supports the trial court's decision and Delong was not harmed by the trial court's failure to consider the public safety report, we will affirm.

## Background

In trial court cause number F21-1211-462, Delong was charged with possession with intent to deliver of 4 to 200 grams of methamphetamine. In trial court cause number F21-1212-462, he was charged with possession with intent to deliver of 4 to 200 grams of gamma-hydroxybutyric acid (GHB). In January 2022, under a plea agreement, Delong was prosecuted for a lesser-included possession offense in each case and placed on deferred adjudication community supervision.

In January 2023, the State filed a motion to revoke Delong's community supervision and proceed with adjudication in each case. The motion alleged that Delong had violated the terms of his community supervision by not paying his monthly supervision fee, not reporting in January 2023, not participating in community service, not reporting for drug and alcohol testing, and using

2

methamphetamine. Delong was arrested on August 17, 2023, *see id.* art. 42A.751, and no bond was allowed at that time.

A hearing on the State's motions was initially set for November 15, 2023. On that date, Delong filed in each case an application for writ of habeas corpus requesting that the trial court hold an evidentiary hearing and, after receiving evidence, grant him a personal recognizance bond. Delong argued that he was suffering from medical and mental health conditions for which he was not receiving adequate treatment in the Denton County Jail and that the lack of adequate care was a violation of his right to be free from cruel and unusual punishment.

The trial court held an evidentiary hearing but denied relief. In a separate order, the trial court set Delong's bond in each case at $7,500. Delong appealed from the denial of his request for release on personal bond.

Because we could not determine from the record whether the trial court had considered a public safety report in this case, *see id.* art. 17.15; *Ex Parte Gayosso*, No. PD-0513-23, 2023 WL 8440099, at *2 (Tex. Crim. App. Dec. 6, 2023), we abated for the trial court to make findings of fact and conclusions of law on the issue. We specifically asked the trial court to make findings about (1) whether it had considered the public safety report; (2) if so, whether the report still existed or had been destroyed; (3) if the report had been considered, any information in the report on which the trial court had relied in making its decision; and (4) any other information on which the trial court had relied in making its decision.

In response, the trial court made the following findings:

> (1) The Court did not consider the public safety report.

> (2) There is no public safety report.

> (3) The Court did not consider any information from the public safety report.

> (4) The Court reviewed the Motions to Proceed with an Adjudication of Guilt that were filed in each case, Delong's exhibits numbers 1 and 2 that were introduced at the hearing[,] and the testimony of Delong at the hearing. After review, the Court denied the writ and request for release on personal recognizance because the evidence showed that Delong was being medically treated at the Denton County Jail.

> The Court on reviewing the files in this case finds that no bond was set on the Motions to Proceed with an Adjudication of Guilt at the time of the arrest on the capias and no motion to set bond was filed in either case. The Court set a bond in each case [at] the same bond amount that had [been] set on each case [as reflected on] the indictments. The Court also found that no allegation of new offense or offenses had been alleged in the Motions to Proceed to an Adjudication of Guilt as a violation of the Delong's deferred probation.

Upon receiving the findings, this court reinstated the appeal.

## Discussion

### I. The record supports the trial court's decision.

#### A. Considerations in setting bail

As used in the Texas Code of Criminal Procedure, the term "bail" includes a personal bond. *Id.* art. 17.01. In setting bail, the trial court must balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—

4

Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.). Setting bail is a fact-driven determination that must be judged on a case's own unique facts. *Ex parte Carter*, 621 S.W.3d 355, 361 (Tex. App.—San Antonio 2021, no pet.); *Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (per curiam) (mem. op., not designated for publication).

Texas Code of Criminal Procedure Article 17.03 provides a trial court with the discretion to release a defendant on personal bond except in circumstances that do not apply here.[1] Tex. Code Crim. Proc. Ann. art. 17.03(a) (authorizing release on personal bond), (b-1) (prohibiting personal bond for defendant who, at the time of the commission of the charged offense, is civilly committed as a sexually violent predator), (b-2) (prohibiting personal bond for defendant who is charged with an offense involving violence as defined in that article or who, while released on bail or community supervision for an offense involving violence, is charged with committing an offense listed in that subsection). In reviewing the trial court's decision in setting bail, including granting or denying a personal bond, we view the evidence in the light most favorable to the trial court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021); *see Ex parte Leachman*, Nos. 01-20-00841-CR, 01-20-00842-CR, 01-

---

[1]Article 17.032 more specifically authorizes the release on personal bond of a defendant with mental illness, but only if a qualified mental health provider has submitted a written report recommending mental health treatment. Tex. Code Crim. Proc. Ann. art. 17.032(b). No expert report was submitted by Delong in this case.

20-00843-CR, 2021 WL 5182880, at *3 (Tex. App.—Houston [1st Dist.] Nov. 9, 2021, pet. ref'd) (mem. op., not designated for publication) (discussing release on personal bond). We will not disturb the decision if it was within the zone of reasonable disagreement. *Ex parte Estrada*, 640 S.W.3d 246, 256 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd).

The court's discretion in setting bail is governed by statutory criteria found in Article 17.15(a). Tex. Code Crim. Proc. Ann. art. 17.15(a). Under that article, "[b]ail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with," but "[t]he power to require bail is not to be used to make bail an instrument of oppression." *Id.* art. 17.15(a)(1), (2). In setting bail, the trial court must consider the following factors:

- the nature of the offense and the circumstances under which it was committed, including whether the offense:

    "(A) is an offense involving violence as defined by Article 17.03; or

    (B) involves violence against a peace officer";

- the defendant's ability to make bail;

- the future safety of the alleged offense's complainant, law enforcement, and the community;

- information about the defendant's criminal history, "including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under [Texas Code of Criminal Procedure] Article 17.021," acts of family violence, other

6

pending criminal charges, and "any instances in which the defendant failed to appear in court following release on bail"; and

- the defendant's citizenship status.

*Id.* art. 17.15(a)(3–7). Other circumstances to be considered include the accused's work record, family and community ties, length of residency, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). The Article 17.15 and *Rubac* factors apply to a decision about whether to release a defendant on personal bond. *See Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.) (applying Article 17.15 and *Rubac* factors in reviewing trial court's denial of habeas relief of release on personal bond or, alternately, reduction in bail); *see also Leachman*, 2021 WL 5182880, at *3 (same); *Ex Parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1–3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (same).

**B. The hearing evidence**

Delong did not argue that he could not afford bail at any amount, and he did not put on any evidence regarding his finances, his work record, his family and community ties to the area, his length of residency in Denton, his prior criminal

7

record, or his conformity with the conditions of any previous bond order.[2] Instead, his application for relief relied solely on his alleged need to obtain medical and mental health treatment outside the Denton County Jail.

Delong had the burden to prove his factual assertions by a preponderance of the evidence. *See Ex parte Cano*, No. 01-22-00692-CR, 2023 WL 2920305, at *3 (Tex. App.—Houston [1st Dist.] Apr. 13, 2023, no pet.) (mem. op., not designated for publication) (citing *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995)). To meet this burden, he called two witnesses at the hearing: himself and John Kissinger, the correctional health administrator for the Denton County jail.[3] He also produced two exhibits, which consisted of records from Denton County Correctional Health regarding Delong's medical treatment.

Delong's testimony raised four basic complaints: that he was not receiving adequate care for HIV and other health conditions, that he was not receiving any care for cancer, that he was not receiving adequate care for his mental health conditions,

---

[2]Delong admitted that in January 2023, he had stopped reporting monthly to the community supervision department as required by the trial court's deferred adjudication order, but neither Delong nor the State submitted evidence of his conformity with bond conditions in previous cases, if any.

[3]In its findings, the trial court did not include Kissinger's testimony in its list of evidence that it considered. This was likely an oversight considering that no objections were raised to his testimony and that the trial court gave no indication at the hearing that it would not consider the testimony. Regardless, even if the trial court did not consider Kissinger's testimony, the parts of Kissinger's testimony that are discussed in this opinion were supported by and based on the jail's records, which were considered by the trial court.

and that he had to submit an excessive number of requests before the jail medical department requested his medical records from other facilities or provided him information about the status of those records requests.

Delong testified that at the time of his arrest, he had been diagnosed with HIV and colorectal cancer and with bipolar depressive disorder, type II; PTSD; and anxiety. He further stated that he had night terrors. Regarding his cancer, Delong testified that he had been diagnosed at John Peter Smith Hospital (JPS) in June 2023 and that he had reported his medical diagnoses during the intake process at the Denton County Jail, although he "didn't go into all of [his] mental health with the night terrors."

Kissinger, on the other hand, testified that Delong had indicated on his intake paperwork that he had HIV but had not indicated in the paperwork that he had cancer. Delong's original medical admission assessment form, which he signed, was offered into evidence as part of Delong's Exhibit 1, and the form did not include any note regarding a cancer diagnosis.

The jail's records included in Exhibit 1 showed that Delong did later bring up his cancer diagnosis; Delong had a medical appointment on September 30, 2023, during which he reported that he had been diagnosed with cancer through JPS. However, Kissinger testified that "[b]ased on the medical records that [the jail] received from [JPS], [Delong] does not have colorectal cancer. . . . He had a biopsy, and it was negative for cancer." Kissinger is not a physician, but his testimony was

9

correct that Delong's JPS medical records, which the jail had requested within days of his admission to the jail, did not mention the word cancer.

The JPS records indicated that Delong had been seen in June 2023 for rectal bleeding. The records noted a clinical impression of a "[s]mall area of [d]ysplasia" and stated that a biopsy had been taken. Testing revealed that Delong had HPV, and the biopsy was evaluated as "[l]ow grade squamous intraepithelial lesion (LSIL, AIN 1, mild squamous dysplasia)." A doctor's note reviewing the result stated, "[Delong] has low grade disease and needs an appointment for repeat HRA in 6 mos." Delong produced no expert medical testimony or other expert evidence that the LSIL indicated cancer,[4] and he produced no other evidence that he had been diagnosed with cancer at JPS.

---

[4]Resources available to this court indicate that LSILs are not cancerous. *See* Vincent T. DeVita Jr. MD, Theodore S. Lawrence MD, PhD, & Steven A. Rosenberg MD, PhD, Cancer: Principles and Practice of Oncology ch. 64, 74 (11th ed. 2018); *see also Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2010 WL 3749456, at *2 n.11 (Fed. Cl. Sept. 1, 2010, order) (unpublished) (citing Kathleen D. Pagana & Timothy J. Pagana, Mosby's Manual of Diagnostic and Laboratory Tests (3d. ed. 2006), for the proposition that test results reporting "mild dysplasia" and "low-grade squamous intraepithelial lesions" are abnormal but not cancerous results); Anal Cancer Foundation, "What is Anal Cancer," https://www.analcancerfoundation.org/what-is-anal-cancer/anal-pre-cancer/ (stating that low-grade squamous intraepithelial lesion are not considered precancerous) (last visited Feb. 15, 2024); Cleveland Clinic, Health Library, Anal Dysplasia, https://my.clevelandclinic.org/health/diseases/21103-anal-dysplasia (stating that a low-grade squamous intraepithelial lesion often goes away without treatment and is unlikely to become cancer) (last visited Feb. 15, 2024). However, no expert medical evidence was presented to the trial court on the matter.

Regarding care for medical issues other than cancer, Delong testified at trial that he was suffering from "internal bleeding." He also argued that when he first arrived at the jail, he was not receiving Bactrim, an antibiotic, that had been prescribed for him by JPS, and that the lack of this antibiotic led to the development of a cyst.

Delong's jail medical records support his testimony that he did not initially receive Bactrim, which Kissinger explained was prophylactically "given to people occasionally with compromised immune systems just to help, my understanding, ward off any opportunistic infection as their immune system responds to the HIV medication." After Delong's initial intake, an employee noted that his JPS records showed that he had been taking Biktarvy (for HIV) and Bactrim, but the jail's infectious disease doctor ordered the Bactrim held until the results from Delong's intake lab tests were received. Then, on August 20, Delong requested a medical appointment for an abscess near his tailbone area, which he said had developed a few days before, i.e., around the time of his arrest. He was seen by a doctor the next day, and the doctor instructed Delong to inform the medical department if the abscess started draining. On August 23, Delong was seen by the infectious disease doctor, who noted that Delong had a ruptured, draining cyst in his tailbone area, and he started Delong on Bactrim. In other words, the medical records in Exhibit 1 showed that Delong had developed the cyst before or within a day of his arrest, and Delong was given Bactrim within a week of his arrest.

11

Regarding internal bleeding, Delong's JPS records show that he was seen at JPS in November 2022 for a complaint about "rectal bleeding" and that he reported that he had been diagnosed with colitis three weeks before. The records state that a CT scan revealed proctitis and diarrhea and that Delong was admitted for antibiotics and nutrition replenishment. Delong was discharged in December 2022. If by "internal bleeding," Delong meant something other than bleeding related to these conditions, the JPS records do not indicate that he had begun suffering from that condition while in JPS care.

As for bleeding while in jail, Kissinger testified about Delong's jail medical records and stated that there were no notes in Delong's jail medical records specific to bleeding. He noted that the records reflected that twice when Delong had been examined by a physician since his arrest, the physician noted that Delong had a ruptured, draining cyst on his tailbone area, and Kissinger acknowledged that the substance that drained from the cyst could include "some serosanguineous fluid." Kissinger is correct that there is no reference in Delong's jail medical records to "internal bleeding" since his arrest and no other reference to anything that could indicate bleeding from sources other than a cyst. Delong produced no evidence that Bactrim could not treat the cyst or that he needed additional care.

In summary, Delong's evidence did not show that he had cancer. Further, his evidence did not show that the treatment he was receiving for the cyst and for HIV was inadequate.

Regarding Delong's mental health, Kissinger stated that Delong has been diagnosed with anxiety and depression for which he is given a medication called Abilify. Kissinger acknowledged that the jail did not begin providing Delong with Abilify until he had been in the jail for several months, but Kissinger explained that the reason for the delay was that Delong had not reported a mental health history during the intake process.

The medical records support Kissinger's testimony. On the medical admission assessment form that Delong signed, Biktarvy was the only medication listed. Additionally, the form included a box listing various health conditions and asked if the patient had ever had or been treated for any of the conditions. The option for "no" was circled next to "anxiety/depression" and "other mental illness."

At a September 30 doctor's appointment, Delong reported that he had previously been seen at North Pointe Psychiatry and Denton MHMR for mental illness, and he stated that he had been prescribed Lamictal and Abilify in the past. However, he denied any mental illness at that time, stating that he was "just missing his support system on the outside."

In October, Delong submitted two requests for information about whether the jail medical department had received his medical records from Denton MHMR and North Pointe Psychiatry. He stated, "Two sick calls ago I had signed release paperwork to try and treat my mental health." He received a response stating that he had only signed a release for JPS records but that records requests would be sent to

13

him for his signature. An employee note regarding the requests stated, "[P]t related no hx of MI on intake and no MH meds[.]"

Delong signed the records request, and the next day, the jail medical department faxed those authorizations to North Pointe and to Denton MHMR. Denton MHMR sent records on November 1. The next day, Delong sent an information request asking if his medical records had been released by and received at the jail from Denton MHMR, JPS, and North Pointe. He received a response stating, "MHMR has not seen you since 2021, [and n]o records [have been] received from North Pointe. Records received from JPS. Specifics can be discussed at sick call if you sign up. You are scheduled for psych clinic." The last sentence referred to the fact that a telehealth appointment had been scheduled for Delong with a psychiatrist.

On November 10, Delong had his telehealth appointment. After that appointment, the doctor prescribed him Abilify.

On November 13, Delong submitted a medical information request asking if his North Pointe records had been received. As of that date, no records had been received. The jail finally received a response from North Pointe on November 17, but the faxed documents stated, "No Encounters found," "No Medication List," and "No chart notes found."

On November 20, 2023, Delong submitted a medical information request asking if his records from North Pointe had been received. He also submitted a request stating, "The psych doctor through the virtual appointment had prescribed a

14

mood stabilizer and an anxiety med. As well as [A]bilify. I[']ve started [A]bilify. Wh[e]n does the other medication begin administrating." The chart notes from the psychiatrist do not indicate that he had been prescribed any medication except Abilify. However, these two requests were submitted on the same day as the hearing, and no one had responded to them as of the time that a copy of the requests had been printed.

This evidence does not support a claim that Delong was not receiving proper care for his mental health in jail. The evidence supported a finding that Delong did not initially report any mental health issues or a need for mental health medications. When he raised the issue, an appointment was scheduled for him with a psychiatrist, and that psychiatrist prescribed him medication. Delong testified that he had previously been on other medications, such as a mood stabilizer and a medication for night terrors, but none of the medical records received at the jail from other facilities indicated that Delong had been on other medications. Delong produced no expert testimony that the Abilify prescribed for him was insufficient for his needs. Further, the psychiatrist's records indicated that he was to have a follow-up psychiatrist appointment four weeks after his first appointment, meaning that Delong would have another opportunity to bring up any problems he had with his current medication regimen.

Regarding Delong's having difficulties communicating with the medical department regarding his conditions, Delong explained that to make a request for

15

treatment, he has to obtain one of the limited tablets available to jail residents and make a request using software on that tablet. Delong stated that he had made requests through the tablet thirteen times. He further stated that each time a nurse responded to ask him about his request, he asked the nurse if they had received notes about his cancer diagnosis, yet the records had not been received and he was not receiving care.

The jail's medical records for Delong support his claim that he asked multiple times for the jail's medical department to obtain his records from other facilities. However, the record does not support any finding that the jail was unresponsive to Delong's requests. The department obtained Delong's medical records after he requested them and submitted authorizations for the department to obtain them, and none of the medical records from those facilities that are in Delong's jail medical records support his claim that he had cancer or that despite his requests, he was not receiving proper treatment for his medical or mental health issues.

In summary, the only basis on which Delong relied to show his right to relief was his need to obtain treatment outside the Denton County Jail, but he did not establish by a preponderance of evidence that he could not receive adequate care while in jail. Accordingly, the trial court did not abuse its discretion by denying relief.

## II. The failure to consider a public safety report was harmless error.

"A magistrate considering the release on bail of a defendant charged with an offense punishable as a Class B misdemeanor or any higher category of offense" must consider a public safety report generated by the public safety report system. Tex.

16

Code Crim. Proc. Ann. art. 17.022. Because the term "bail" includes a personal bond, *see id. art.* 17.01, if a defendant is charged with a felony, a trial court must consider the public safety report when considering whether to release the defendant on personal bond. *Id.* arts. 17.01, 17.022; *see id.* arts. 17.15(a)(6) (listing the defendant's criminal history shown in a public safety report as information a court must consider in determining bail amount), 17.021(b)(3) (stating that a public safety report must "provide information on the eligibility of the defendant for a personal bond").

The public safety report system must contain the following information, which is the only information that may be included in a public safety report:

> (1) the requirements for setting bail under Article 17.15 and;

> (2) "the defendant's name and date of birth or, if impracticable, other identifying information, the cause number of the case, if available, and the offense for which the defendant was arrested;"

> (3) "information on the eligibility of the defendant for a personal bond;"

> (4) "information regarding the applicability of any required or discretionary bond conditions;" and

> (5) the criminal history of the defendant in summary form, including information about:

>> (A) previous convictions;

>> (B) pending charges;

>> (C) previous sentences imposing confinement;

>> (D) convictions or pending charges for:

17

(i) offenses involving violence as defined by Article 17.03; or

(ii) offenses involving violence directed against a peace officer; and

(E) any previous failures of the defendant to appear in court after release on bail.

*Id.* art. 17.021(b), (d)(3).

The trial court's findings state that the court did not consider the public safety report. Thus, the trial court erred. *See Gayosso*, 2023 WL 8440099, at *2.

However, *Gayossa* states that a court of appeals may be able to consider harm in reviewing such error. *Id.* We conclude that a harm analysis applies to this situation. *Cf. Bates v. State*, No. 02-20-00114-CR, 2021 WL 1229962, at *3 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op.) (holding that the appellant was not harmed by the trial court's failure to consider mandatory presentence investigation report before sentencing the appellant); *Smith v. State*, 223 S.W.3d 690, 695 (Tex. App.—Texarkana 2007, no pet.) (noting that "the violation of a mandatory statute does not, by itself, call for the reversal of a conviction").

Under the applicable harm analysis, we disregard the trial court's error if it did not affect Delong's substantial rights. *See* Tex. R. App. P. 44.2(b). Analogizing this situation to one in which the trial court has failed to consider a presentence investigation report in assessing punishment, we will assess the effect that the trial court's error had on its bail decision by considering the entire record, the nature of

18

the evidence supporting the bail decision, the character of the error (i.e., the failure to consider the information in a mandatory report before making a bail decision), and how the error might be considered in connection with other evidence in the case. *See Yarbrough v. State*, 57 S.W.3d 611, 619 (Tex. App.—Texarkana 2001, pet. ref'd); *see also Bates*, 2021 WL 1229962, at *3.

We have already discussed the evidence before the court at the hearing and why that evidence supported the trial court's decision. The trial court had Delong's identifying information even without the public safety report. The report would have told the trial court Delong's eligibility for a personal bond, but there was no dispute at trial that Delong was eligible, and if Delong had been ineligible, then having that information presented to the trial judge in the public safety report could only hurt him. Regarding any criminal history or failure-to-appear information the trial court would have seen in the report, its omission could not have harmed him, either. If Delong had other criminal history that was not presented to the trial court in the record, evidence of that history would support the trial court's decision to deny his release on personal bond. If the report would have shown that Delong had no criminal history other than what was presented at the hearing, that would have not shown that the trial court abused its discretion because (1) even without the report, the trial court had no reason to believe that Delong had other criminal history because none had been presented to it and (2) more importantly, the court's decision was

19

based on its determination that Delong was receiving adequate care in jail rather than on a lack of criminal history.

In summary, the trial court had from other sources some of the information that would have been in the public safety report, and Delong was not harmed by the trial court's not having the remaining information. In this situation, the only harm that could have resulted from the lack of a report would have been if the report showed that Delong had no prior criminal history and if the trial court had denied the personal bond because it mistakenly believed that Delong had a more extensive criminal history than he did. In this case, however, the reason that Delong provided for requesting a personal bond was a lack of adequate care in jail, and the basis for the trial court's denial was that Delong was receiving adequate care. Accordingly, the trial court's failure to consider the public safety report did not affect Delong's substantial rights.[5]

---

[5]We note that after we issued our abatement order, Delong's attorney objected to our order. He argued the trial court should not consider the public safety report because, among other objections, the trial court's consideration of evidence that a defendant is unable to review and to which the defendant is unable to object violates the defendant's right to due process under the United States Constitution and to due course of law under the Texas Constitution. Accordingly, Delong impliedly agrees that he suffered no harm from the trial court's error in not considering the report.

## Conclusion

The trial court erred by not considering a public safety report, but because Delong was not harmed by that error, and because Delong did not establish by a preponderance of evidence that he could not receive adequate care while in jail, we affirm the trial court's denial of habeas relief.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered: February 22, 2024