**Roger Rocky HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00171–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 29, 2002.

Decided June 21, 2002.

Discretionary Review Refused Nov. 20, 2002.

David Cunningham, Attorney at Law, Houston, for Appellant.

Eric E. Kugler, Assistant District Attorney, William J. Delmore III, Harris County Assistant District Attorney, Houston, for The State.

Before GRANT, ROSS, JJ., and CORNELIUS,* C.J.

## OPINION

Opinion by Justice ROSS.

Roger Rocky Hernandez appeals his judgment of conviction for the offense of retaliation. *See* TEX. PEN.CODE ANN. § 36.06 (Vernon Supp.2002). He entered a plea of guilty before the court without an agreed recommendation as to punishment. The court assessed punishment at five years' imprisonment. The sole issue on appeal is whether the trial court abused its discretion in failing to conduct a hearing on a motion for new trial.

Hernandez was indicted for threatening to murder Billy Humphrey, a public servant. At the time of the alleged offense, Hernandez was an inmate in a state jail facility where Humphrey was the warden.

---

* William J. Cornelius, C.J., Retired, Sitting by Assignment

Humphrey and Hernandez were personally acquainted with each other. The record shows that, on August 4, 2000, guards at the facility conducted random cell searches, which resulted in the removal of contraband from Hernandez' cell. The removal of this contraband visibly angered Hernandez. He approached Humphrey and stated, "WHEN I GET OUT, I'M GOING TO FIND YOU AND KILL YOU, YOUR WIFE AND THE KIDS." Hernandez had been a problem prisoner, with reports in his record of possession of contraband and fighting. Humphrey therefore took the threats seriously and was in fear for his and his family's safety.

Before the entry of Hernandez' plea, the State provided defense counsel with two written notices of the State's intent to introduce evidence of extraneous offenses and other bad acts. On March 13, 2001, the State gave notice of convictions in Bexar County dated November 20, 1998, for theft, possession of a controlled substance, and unauthorized use of a motor vehicle. On March 16, 2001, the State gave written notice of five instances of disciplinary violations committed by Hernandez while incarcerated.

At his trial on March 19, 2001, Hernandez signed a written waiver of constitutional rights, agreement to stipulate to evidence, and a judicial confession stating that the allegations of the indictment are true. He verbally acknowledged awareness that the felony charge to which he was entering a plea carried a possible sentence of two to ten years' imprisonment and a fine not to exceed $10,000.00, and that he might receive deferred adjudication or probation. When asked if anyone had suggested to him that, by entering a plea before the court, a specific type or level of punishment would be imposed, Hernandez answered, "No." Hernandez ac-

knowledged by his signature that he received written plea admonishments, was aware of the consequences of his plea, and was satisfied with the "effective and competent representation" of his attorney. He filed an application for community supervision and verbally confirmed for the court that he wanted a presentence investigation (PSI) report prepared. He also stated that no one forced him to enter a plea and that no one promised him "anything whatsoever." Based on Hernandez' plea and the evidence presented, the trial court found the evidence sufficient to substantiate Hernandez' guilt, but deferred a finding of guilt and ordered a PSI report. The case was reset for sentencing on May 17, 2001.

At the May 17 punishment hearing, the State offered the PSI report into evidence, without objection, and rested. Hernandez then called four witnesses. He first called his fiancee, Angel Zamora, who asked the court to place Hernandez on probation; Hernandez' mother, Sylvia Hernandez, also asked the court to grant Hernandez probation; and Hernandez' father, Robert Hernandez, Sr., testified he had left the family home when Hernandez was twelve years old.[1] On cross-examination, the State attempted to question Hernandez' father about Hernandez' disciplinary violations while confined in the state jail facility, but Hernandez' objection was sustained. Hernandez testified on his own behalf. His own counsel questioned him concerning his prior convictions and his state jail disciplinary violations. On cross-examination, the prosecutor questioned him about the specifics of the prison disciplinary violations. On redirect examination, Hernandez requested probation.

In closing argument, the prosecutor argued, "He wants this court to believe that

1. Hernandez was twenty-three years old at the time of trial.

the leopard has changed its spots, but we see while he was in prison, repeat offense after offense, some violent. . . . I ask the court to send him back to prison. He hasn't earned probation."

The court assessed Hernandez' punishment at five years' imprisonment.

In a motion for new trial, filed by new counsel, Hernandez alleged ineffective assistance of counsel at trial. He specifically complained his trial counsel failed to investigate the law and facts concerning his guilt or innocence, gave him erroneous advice which caused him to enter an involuntary plea of guilty, and failed to investigate the law and facts concerning his punishment.

In support of the motion, Hernandez filed several affidavits. In his own affidavit, Hernandez denied the allegations of the indictment and stated he gave his trial attorney the names of several individuals who were witnesses to the incident in question, but who were never contacted. Hernandez states that, had these witnesses been interviewed, his attorney would have learned he did not threaten the warden. He further states he never had the opportunity to meet with his trial attorney to fully discuss the case. He alleges his trial attorney told him of a plea offer of two years' imprisonment, which his attorney urged him to accept. He further states his attorney told him he would receive probation and this is the only reason he pled guilty.

Other affidavits were filed by Angel Zamora, Sylvia Hernandez, Robert Hernandez, Sr., and Maria Hernandez. Maria is Hernandez' stepmother. All of these persons state in their respective affidavits that Hernandez' trial attorney told him he would receive probation if he entered a plea of guilty.

Hernandez' appellate counsel also filed an affidavit in support of the motion for new trial, stating, in part:

On the day that [Hernandez] was sentenced to five years in prison, I was present in the 177th Judicial District Court. Although I did not witness the sentencing hearing or see the pronouncement of sentence, I do have personal knowledge of certain matters that took place before the hearing.

I was in court that day on unrelated matters. During the course of my presence in the courtroom, I became aware that the state had subpoenaed witnesses from TDCJ–ID to participate in a sentencing hearing involving [Hernandez]. I was also made aware that those witnesses had not appeared and would not be available that day. Although the state wanted to have those witnesses present, they indicated that they were prepared to go forward without the witnesses present. I know [the trial attorney], the attorney for [Hernandez]. When he arrived, I told him what I had heard, that is, that the prison guards and officials were not present and that the state would proceed at the sentencing hearing without them. I told [the trial attorney] that I did not believe that the state could introduce that evidence at sentencing unless he opened the door. Shortly after that conversation, I concluded my business and left the courtroom. I returned later after the sentencing hearing had been concluded.

On the last page of the motion for new trial, there appears a handwritten note, signed by appellate counsel, stating he spoke with a substitute coordinator "@ 49 San Jacinto @1100 on 6/14/01." The record also contains a letter, dated June 25, 2001, filed on June 27, 2001, addressed to the court and the clerk, stating the motion for new trial had been filed, indicating

"presented to Joey DeBryn within two days of filing," and formally requesting a hearing on the motion under TEX.R.APP. P. 21. The letter notes the flooding problems in the Houston area at that time. On July 30, 2001, appellate counsel filed a written objection to the submission of the motion solely on affidavits and requested a hearing. The court's docket sheet shows only the filing of the motion.

In response to Hernandez' contention the trial court abused its discretion in refusing to hold a hearing on the motion for new trial, the State contends: 1) a proper presentment to the trial court was not made by Hernandez; and 2) Hernandez failed to show the trial court abused its discretion in not holding a hearing on the motion.

TEX.R.APP. P. 21 governs new trials in criminal cases. Rule 21.4(a) provides that a defendant may file a motion for new trial "before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court." The record in this case reflects a timely filing; sentence was imposed May 17, 2001, and the motion was filed June 14, 2001.

■ Rule 21.6 provides, "The defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposed or suspends sentence in open court." TEX.R.APP. P. 21.6. The Texas Court of Criminal Appeals, finding the word "present" to be "somewhat ambiguous" and resorting to extra-textual sources, determined the purpose or object sought to be obtained by this requirement "is to put the trial court on actual notice that a defendant desires the trial court to take some

action on the motion for new trial such as a ruling or a hearing on it." *Carranza v. State*, 960 S.W.2d 76, 78 (Tex.Crim.App. 1998). The record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise brought the motion to the attention or actual notice of the trial court. *Id.* at 79. The majority opinion also quoted from the concurring opinion of Judge Overstreet,[2] which stated presentment must result in actual notice to the trial court and may be evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket. *Id.* at 79–80. In *Gumpert v. State*, 48 S.W.3d 450, 458–59 (Tex.App.-Texarkana 2001, pet. ref'd), we held that mere filing of the motion for new trial was not sufficient to show "presentment" as required by the rule; the record must show the movant actually delivered the motion to the trial court or otherwise brought it to the attention or actual notice of the trial court.

Hernandez has cited *Daniels v. State*, 63 S.W.3d 67 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd), which addressed the issue of sufficient "presentment" of the motion for new trial and held the presentment there was sufficient. The record in that case contained a docket entry: "Motion for New Trial was presented to the Court." The Fourteenth Court of Appeals held that, based on this docket entry, the trial court had the required actual notice of the motion within ten days of the date of its filing and the defendant had fulfilled his obligation under Rule 21.6. *Id.* at 69.

■ *Daniels* is distinguishable from this case, as there is nothing in the record to substantiate that the trial court had "actual notice." The handwritten notation

---

**2.** The majority opinion called it "essentially the same holding as that set out in this opin-

ion." *Carranza v. State*, 960 S.W.2d 76, 80 (Tex.Crim.App.1998).

in which counsel states he spoke with a substitute coordinator "@ 49 San Jacinto @1100 on 6/14/01," contains only the unilateral assertion by counsel of his conversation with court personnel on the date indicated. It does not contain acknowledgment of presentment to the judge, the coordinator, or to anyone else who could speak for the court. Significantly, the docket sheet in this case shows only the filing of the motion.[3]

After oral argument and submission of this case, Hernandez filed a motion to supplement the record on appeal, or in the alternative, to abate the appeal to the trial court to make findings of fact concerning the "presentment" of the motion for new trial. The purpose was to facilitate a showing by Hernandez that the trial court was properly presented with the motion. Accompanying the motion to supplement was the affidavit of a former Harris County assistant district attorney who handled the Hernandez case. This affidavit states that, because a tropical storm caused flooding of the Harris County Criminal Justice Center in June 2001, normal trial dockets were not being heard at that time, and offices of both the courts and the district attorney had to be relocated. The affidavit asserts that both the judge and the court coordinator in Hernandez' case had actual notice of the filing of the motion for new trial, and that it was the judge's stated intention to rule on the motion based solely on affidavits. Hernandez' motion to supplement is also supported by copies of two letters from appellate counsel, acknowledging the difficulties under which the courts were operating at that time because of the flooding.

In *Yarbrough v. State*, 57 S.W.3d 611 (Tex.App.-Texarkana 2001, pet. ref'd), we held that, under the Rules of Appellate Procedure, specifically Tex.R.App. P. 34.1, we are not permitted, in a direct appeal, to consider affidavits not before the trial court, except regarding matters affecting our jurisdiction. *Id.* at 615. Rule 34.1 defines the contents of an appellate record—the clerk's record and the reporter's record. We held that affidavits filed solely in the appellate court do not properly fall into either part of the record and, therefore, cannot properly be considered by a court of appeals. *Id.* at 616. This is, in principle, no different from the Texas Court of Criminal Appeals' admonition that claims of ineffective assistance of counsel must be "firmly founded" in the record and that such claims are often "inappropriate" for determination on direct appeal. *Thompson v. State*, 9 S.W.3d 808, 813 n. 5 (Tex.Crim.App.1999).

While we are aware of the flood in the Houston area during significant time periods in this case, the Rules of Appellate Procedure and caselaw do not permit us to consider matters which are, under the rules, outside the record. This is in accord with the basic function of an appellate court and the basic concept of an appeal. An appeal is a review by a superior court of an inferior court's decision and may, generally, be used to obtain a review of a judgment for errors apparent on the face of the record, determine whether error occurred in the proceedings leading up to

---

**3.** Generally, docket sheets are not evidence. *Rodriguez v. State*, 834 S.W.2d 592, 595 (Tex. App.-Houston [1st Dist.]), *pet. granted in part & ref'd in part; remanded in part on other grounds*, 844 S.W.2d 744 (Tex.Crim.App. 1992). However, "[a] docket entry may supply facts in certain situations, but it cannot be used to contradict or prevail over a final judicial order." *N S W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex.1977) (*citing Matthews v. Looney*, 132 Tex. 313, 123 S.W.2d 871 (1939); *Hamilton v. Empire Gas & Fuel Co.*, 134 Tex. 377, 110 S.W.2d 561 (1937); *Ex parte Rains*, 113 Tex. 428, 257 S.W. 217, 220 (1923); *Stark v. Miller*, 63 Tex. 164 (1885)).

the judgment, or determine the validity of the judgment itself. However, an error in fact that is not exhibited by the record cannot be corrected by such review. 4 TEX. JUR.3D *Appellate Review* §§ 1, 2 (1999).

■ The record does not contain an acknowledgment of presentment of the motion for new trial to the trial court, and the docket sheet does not show presentment. Based on the applicable law and the lack of proof in the record of actual notice, as required, we hold Hernandez did not timely "present" the motion for new trial to the trial court.

Even assuming Hernandez' motion for new trial was properly presented to the trial court, we hold the motion and affidavits, even if assumed to be true, were not sufficient to grant Hernandez a new trial.

■ When an accused properly presents a motion for new trial, raising matters not determinable from the record, which would entitle the accused to relief, it is an abuse of the trial court's discretion to fail to hold a hearing on the motion. *King v. State,* 29 S.W.3d 556, 569 (Tex.Crim.App. 2000); *Reyes v. State,* 849 S.W.2d 812, 815–16 (Tex.Crim.App.1993). The motion must be accompanied by affidavit(s), specifically showing the truth of the grounds of attack. *King,* 29 S.W.3d at 569; *Edwards v. State,* 37 S.W.3d 511, 514 (Tex. App.-Texarkana 2001, pet. ref'd). If the affidavits do not supply reasonable grounds which would entitle the accused to the relief sought, the trial court does not abuse its discretion in refusing to hold a hearing. *King,* 29 S.W.3d at 569; *Jordan v. State,* 883 S.W.2d 664, 665 (Tex.Crim. App.1994). While the affidavits are not required to reflect every argument legally required to establish relief, the motion or affidavits must reflect that reasonable grounds exist for holding that such relief could be granted. *Edwards,* 37 S.W.3d at 514.

Hernandez' motion for new trial contends that his plea of guilty was involuntary and that he was denied effective assistance of counsel due to erroneous assurances from trial counsel regarding his punishment. Hernandez' affidavit attached to the motion for new trial states that he did not commit the crime with which he was charged, that his trial counsel had been pressuring him to accept a two-year plea-bargained sentence offered by the State, and most significantly, that on the day he was to enter his plea, he received assurances from trial counsel that he would receive community supervision. The affidavits of his relatives, also attached to the motion for new trial, are to the same effect, that trial counsel told Hernandez that, if he pled guilty, he would receive community supervision. Hernandez further stated in his affidavit the only reason he pled guilty to the offense charged was because he got such assurances from his attorney.

■ The matter of whether the plea of guilty in this case was voluntary or involuntary is determinable from the record. At the plea hearing, Hernandez stated in open court, and in writings submitted to the court, that he was guilty of the crime for which he was charged, that he was aware his plea of guilty was without an agreed recommendation as to punishment, and that the trial court could and would consider the full range of punishment authorized by law. Hernandez further acknowledged that his plea of guilty was not the result of force, threats, or promises, and that he was satisfied with his lawyer's representation.

■ An attestation of voluntariness at the plea hearing creates a heavy burden for the appellant to show involuntariness at a subsequent hearing. *Valle v. State,* 963 S.W.2d 904, 909 (Tex.App.-Texarkana 1998, pet. ref'd). In *Messer v. State,* 757

S.W.2d 820 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd), the defendant entered a plea of no contest, telling the trial court at the plea hearing that no one had "forced, threatened, or coerced" him in any way in the entry of his plea. He testified that he was entering his plea voluntarily and that he recognized it was an open plea without recommendation by the state. A PSI report was ordered, and the defendant was specifically advised the state reserved the right to argue for whatever punishment it felt appropriate at a later hearing. *Id.* at 822. At a hearing on his motion for new trial, Messer testified that his *nolo contendere* plea was entered strictly because his attorney advised him he would get probation. *Id.* Trial counsel testified that, based on an informal meeting with the judge and the prosecutor, she thought if the defendant entered a no contest plea, his sentence would be probated, and that she so advised the defendant. *Id.* at 823–24. Trial counsel acknowledged that her perceptions of what occurred at this meeting were mistaken and that her advice to the defendant as to the promise of probation was unprofessional and incorrect. *Id.* at 826. Notwithstanding this testimony, the Houston court held:

> The statements made to appellant by his defense counsel about the punishment he might expect if he pleaded no contest simply constituted counsel's predictions, albeit erroneous ones, about the logical outcome of certain trial strategy. In view of the clear admonitions given by the trial court before the plea, which both the appellant and his counsel admit they understood, appellant cannot credibly contend that his plea was involuntary and that he was denied effective assistance of counsel.

*Id.* at 826.

Further, in the opinion on the appellant's motion for rehearing, the court stated:

> Here, the testimony presented by appellant and his counsel at the new trial hearing shows that counsel was fully apprised of the trial court's intent to consider all factors before making an assessment of punishment. Having assured the court that his plea was voluntary and not based on any promises or inducements ... appellant cannot now complain that his counsel was ineffective in advising him about the court's intent in assessing punishment.

*Id.* at 828 (op. on reh'g).

In *Messer*, trial counsel admitted giving her client unjustified assurances of a probated sentence. However, she and the defendant acknowledged the judge told them in open court of the full range of punishment available, and that no assurances of a specific punishment had been made. In the instant case, there is no affidavit from trial counsel at all. Even if we accept as true Hernandez' assertions of counsel's assurances, and accept as true all other witnesses' testimony that trial counsel told him he would get probation, we agree with the holding of the Houston court that such assurances, albeit erroneous, cannot overcome the admissions Hernandez made in open court that his plea was voluntary, with full knowledge of the court's sentencing options.

The trial court did not abuse its discretion by not holding a hearing on Hernandez' motion for new trial.

Hernandez contends his trial counsel rendered constitutionally ineffective assistance in two respects: one, the giving of erroneous advice as to his prospects for community supervision, and two, for failing to heed the warnings of Hernandez' present appellate counsel regarding the unavailability of the State's witnesses at the

punishment hearing and calling Hernandez to testify at that hearing.

When confronted by a claim of ineffective assistance, the two-pronged analysis of *Strickland v. Washington*[4] is utilized to determine whether the accused did not receive constitutionally effective assistance of counsel. Under the first prong of the *Strickland* test, an appellant must show counsel's performance was deficient, i.e., show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. To be successful in such a claim, an appellant must show counsel's representation fell below an objective standard of reasonableness. Under the second prong, an appellant must show the deficient performance jeopardized his defense. The appropriate standard for judging prejudice requires an appellant to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000); *Smith v. State*, 40 S.W.3d 147, 149 (Tex.App.-Texarkana 2001, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the ineffective assistance. When determining the validity of a defendant's claim of ineffective assistance, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. When the record is silent, i.e., when there is nothing in the record to reflect counsel's reasons for actions or inactions, and plausible explanations exist, the appellate court should presume trial counsel made all significant decisions in the exercise of professional judgment. *Valdes–Fuerte v. State*, 892 S.W.2d 103, 112 (Tex.App.-San Antonio 1994, no pet.).

Regarding the claim of ineffective assistance based on counsel's assurance of a probated sentence, we refer to *Messer*, cited above. The Houston court held in that case the second prong of the *Strickland* test could not be met where the defendant and his attorney were specifically advised in open court that all punishment options were available, and where they specifically stated that no promises had been made, and where the defendant stated that he understood the trial court could assess any appropriate punishment. *Messer*, 757 S.W.2d at 828.

To successfully attack a guilty plea for ineffective assistance, a defendant must show counsel's alleged deficiencies caused his plea to be unknowing and involuntary. This standard requires a defendant to show there is a reasonable probability that, but for counsel's errors, defendant would not have pled guilty, but would have insisted on going to trial. *State v. Kelley*, 20 S.W.3d 147, 151 (Tex. App.-Texarkana 2000, no pet.). Hernandez stated in open court, and he and his counsel signed documents reflecting, that his plea was voluntary and made with full knowledge of potential punishments.

Regarding the decision to call Hernandez to testify at the punishment hearing, we note the silence of the record regarding trial counsel's reasoning in making this determination. No affidavit sub-

4. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard was adopted as the standard for claims made under the Texas Constitution. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986).

mitted with the motion sets forth counsel's strategy, and for the reasons stated above, we are precluded from considering appellate counsel's assertion, made in a post-submission motion to this Court, concerning his unsuccessful attempts to obtain trial counsel's affidavit. We will make a full inquiry into counsel's strategy or tactics only if, from all appearances after trial, there is no plausible basis in strategy or tactics for such counsel's actions. We will not second-guess counsel's trial strategy; nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Matlock v. State*, 20 S.W.3d 57, 59 (Tex.App.-Texarkana 2000, pet. ref'd). The State offers the plausible explanation that trial counsel may have adopted the strategy of fully disclosing Hernandez' past misdeeds, and argue that he had reformed and would be an appropriate candidate for community supervision. In closing argument, trial counsel stressed Hernandez' difficult upbringing, his present support of three children, and that he had learned from his mistakes.

While present appellate counsel may have chosen a different strategy in attempting to keep out these prior prison disciplinary violations, we conclude Hernandez' affidavits, even if true, would fail to overcome the recognized presumption in favor of a viable trial strategy.

We find no reasonable basis on which the motion for new trial should have been granted, even if the testimony contained in the affidavits was found to be true. We therefore find no abuse of discretion by the trial court in failing to conduct a hearing on Hernandez' motion.

We affirm the judgment.