

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00270-CR

_____

RUSSELL LITTLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 19F0597-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

A Bowie County jury convicted Russell Little of two counts of sexual assault of a child and three counts of indecency with a child by sexual contact. For each of the five convictions, the jury assessed a sentence of twenty years' imprisonment[1] and a $10,000.00 fine. On appeal, Little argues that the evidence is legally insufficient to support any of his convictions and that double jeopardy was violated by his convictions for both sexual assault of a child and indecency with a child arising from contact occurring on the same day. Little also argues that the trial court abused its discretion in admitting extraneous-offense evidence without any limiting instructions, that the State engaged in misconduct during jury argument, and that his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment.

We conclude that (1) legally sufficient evidence supports each conviction, (2) there was no double jeopardy violation in this case, and (3) Little has failed to preserve his last three points of error. As a result, we affirm the trial court's judgments.

*(1)    Legally Sufficient Evidence Supports Each Conviction*

Little first argues that the evidence is legally insufficient to support his convictions. We disagree.

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.

---

[1]The trial court ordered that Little serve the five sentences consecutively.

Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). In drawing reasonable inferences, the trier of fact "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). As the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may believe all, some, or none of any witness's testimony. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

3

In its five-count indictment, the State alleged that Little (1) on or about February 19, 2017, intentionally or knowingly caused the penetration of the sexual organ of Jane Simmons,[2] a child younger than seventeen, with his finger; (2) on or about January 1, 2017, intentionally or knowingly caused the penetration of Jane's sexual organ with his finger; (3) on or about January 1, 2017, engaged in sexual contact with Jane by touching her genitals with the intent to arouse or gratify his sexual desire; (4) on about November 1, 2016, through December 31, 2016, engage[d] in sexual contact with Jane by touching her genitals with the intent to arouse or gratify his sexual desire; and (5) on about November 1, 2016, through December 31, 2016, engage[d] in sexual contact with Jane by touching her genitals with the intent to arouse or gratify his sexual desire.[3]

Each count was supported by Jane's testimony at trial. Jane was best friends with Little's oldest daughter and met Little when she was fourteen. Little was also a youth group leader at Rise Church, f/k/a Center West Baptist Church. According to Jane, Little was very hands-on with the girls in the youth group, would "constantly tickle [them] and stuff," and touched her buttocks and chest during the tickling a couple of times. Little would also take her and her friends on camping trips and would often bring Jane to his home after church. Because of her friendship with Little's oldest daughter, Jane spent almost every weekend sleeping over at Little's house.

---

[2]We use pseudonyms to protect the identity of persons who were children at the time of the offenses alleged in this case. *See* TEX. R. APP. P. 9.10.

[3]Each count also alleged that Jane was a child younger than seventeen.

Jane described her relationship with Little as a close one. During her visits, Little would massage her back, but eventually progressed to massaging her buttocks and chest. Jane testified that, in November 2016, when she was fifteen, she was receiving a massage from Little after church when Little "touched [her] on the outside of [her] clothes on [her] vagina" for "[a] couple seconds" and "just stopped." On a different day in November 2016, Jane said she was again receiving a massage from Little when he touched her vagina on the outside of her clothing for "[a] little bit longer." In January 2017, Jane testified that, during another massage, Little touched her vagina outside of her clothing for "a little bit longer than the last" time and then went underneath her clothing to penetrate her vagina with his finger and "just moved around" for "[a] couple seconds."

Jane also testified about the last instance of sexual abuse, which occurred after Little picked her up from church on February 19, 2017, and took her mudding with his oldest daughter. After a bath, she and Little's oldest daughter lay on the couch under a blanket. Jane testified that Little sat next to her under the blanket, that she felt "his left hand sliding up . . . [her] leg," and that Little penetrated her vagina with his finger for a "minute or two." Afterward, Little went into his room and called for Jane. When Jane went into the room, Little closed and locked the door and asked Jane to lie down on the bed. Jane refused, unlocked the door, left the room, and, two weeks later, made an outcry of sexual abuse.

Ashleigh Bridges testified that she and her husband, Seth Bridges, were junior youth group leaders at the church with Little and his former wife, April Jones. Bridges said that she began noticing concerning behavior involving Little, including an incident when "one of the

youth girls had run up to him and hugged him but jumped up and wrapped [her] legs around [Little]," who placed his hands on her bottom. Because Bridges felt that "for a youth girl to do that with any male figure [was] inappropriate," she raised the issue with the pastor. Bridges later learned from a third party that Jane had made allegations against Little.

Tanya Radford, who was married to Leon Radford, a church deacon, testified that she saw Little "reach[] up and just kind of [run] his hand down [Jane's] hair" and that it "just . . . struck" her. According to Radford, Jones revealed that Jane had made an allegation against Little. Mrs. Radford, who met with Jane and her mother the next day, testified, "[S]he just told me what happened, and I typed it all up." That afternoon, Radford called the police to come to the church to take Jane's statement.

Jones testified that she had three young daughters with Little during their marriage. Jones testified that Little was very active with the children and their friends and that he would horseplay with and tickle them. Jones authenticated an October 30, 2016, photograph of Little and Jane asleep on the couch under the same blanket.

David Biggar, an investigator with the Bowie County Sheriff's Office, testified that he interviewed Little during his investigation of Jane's April 2017 allegations. According to Biggar, Little said that "he and the girls tickle one another on a very regular basis" and that he would "grab them on the leg," but he denied Jane's allegations and said she was like his daughter. In an interview with Little's oldest daughter, Biggar learned that Jane had come to their home February 19, 2017, that they had gone mudding and bathed, and that Little's daughter watched Jane follow Little into his room.

6

Jennifer Kern, the licensed professional counselor who treated Jane, testified that Jane had a lot of anxiety and depression, felt guilt and shame, and suffered nightmares due to the abuse. Jessica Kelley, a forensic interviewer at the Texarkana Children's Advocacy Center, testified that she interviewed Jane after her outcry. Kelley also interviewed Little's oldest daughter, who corroborated some of Jane's statements.

"The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child." *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Accordingly, we find that Jane's testimony alone was legally sufficient to show that Little committed two counts of sexual assault of a child, by penetrating her vagina with his fingers on two separate occasions, and three counts of indecency with a child, by touching her vagina outside of her clothing on three separate occasions.[4] Because the State presented legally sufficient evidence of each offense, we overrule this point of error.

*(2)*     *There Is No Double Jeopardy Violation in This Case*

Little also argues that his conviction for sexual assault and indecency with a child by sexual contact arising from a single act in January 2017 constituted a double jeopardy violation. It did not.

The Double Jeopardy Clause protects against "multiple punishments for the same offense." *Price v. State*, 434 S.W.3d 601, 609 (Tex. Crim. App. 2014) (quoting *Whalen v. United States*, 445 U.S. 684, 688 (1980)); *see* U.S. CONST. amends. V, XIV. The Texas

---

[4]To the extent Little complains that Jane was not able to provide specific dates of some of the alleged offenses, "[i]t is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).

Constitution provides substantially identical protections. *See* TEX. CONST. art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.").

Because of the "fundamental nature" of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal if "(1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 57–58 (Tex. Crim. App. 2014). Here, as we explain below, no double jeopardy violation is clearly apparent from the record.

The Texas Court of Criminal Appeals has said that "what constitutes the 'same' offense for double jeopardy purposes in the multiple-punishments context is strictly a matter of legislative intent: how many different offenses did the Legislature contemplate an accused should be susceptible to being punished for?" *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015). It has "also said that the Legislature's intent concerning multiple punishments for different offenses defined within the same statute can be ascertained by resort to a 'unit[s] of prosecution' analysis." *Id.* (quoting *Garfias*, 424 S.W.3d at 58) (footnotes omitted). "In a multiple punishments analysis such as this one, 'the protection against double jeopardy is not violated if the [the Legislature intended that the] offenses constitute separate allowable units of prosecution.'" *Id.* (quoting *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015)).

As for indecency with a child, "the Legislature intended that a defendant should be susceptible to punishment for each act of [contact or exposure]." *Id.* at 722–23 (quoting *Loving v. State*, 401 S.W.3d 642, 644, 649 (Tex. Crim. App. 2013)). "A person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity. The key is that one act ends before another act begins." *Aekins v. State*, 447 S.W.3d 270, 278 (Tex. Crim. App. 2014).

Jane's testimony at trial described two separate offenses occurring on the same day in January. First, Jane testified that Little touched her vagina outside of her clothing during a massage for a little bit longer than the last time he had done so.[5] This touching outside of the clothing established the commission of indecency with a child by sexual contact. Next, Jane testified that Little placed his hand underneath her clothing to penetrate her vagina and "just moved around" for "[a] couple seconds." This second act established the commission of sexual assault.

Had the State sought to obtain a conviction for both Little's touching underneath the clothing in addition to the penetration offense, Little's double jeopardy claim would have merit because "[w]here two crimes are such that the one cannot be committed without necessarily committing the other, then they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *Id.* at 280. Here, however, as in

---

[5]Under the statute defining indecency with a child, "sexual contact" means "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." TEX. PENAL CODE ANN. § 21.11(c)(1).

*Maldonado v. State*, "[w]hile it is true that penetration cannot physically occur in the absence of contact," the contact of Little's touching of Jane's vagina outside of her clothing was not "factually subsumed because there was evidence that [this] separate and distinct indecency-by-contact offense[] occurred at [another] time[] in addition to the contact associated with the penetration offense[]." *See Maldonado v. State*, 461 S.W.3d 144, 149–50 (Tex. Crim. App. 2015). In other words, the act of penetrating Jane's vagina could have been committed without touching her vagina outside of her clothing. As a result, there was a separate act of indecency by contact that ended when Little stopped touching Jane outside of her clothing and another act of sexual assault by penetration. *See Banks v. State*, 494 S.W.3d 883, 890 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("Where . . . the complainant testifies to separate incidents of both contact outside and penetration inside, the contact is not subsumed within the penetration. Rather, the complainant has suffered two separate acts with two separately formulated intents."). "Because the focus of sex offenses is the prohibited conduct and the [L]egislature intended to allow separate punishments for each prohibited act," Little's "multiple convictions do not violate the Double Jeopardy Clause." *Maldonado*, 461 S.W.3d at 150.

We conclude that no double jeopardy violation is clearly apparent from the face of the record. As a result, we overrule this point of error.

*(3)     Little Has Failed to Preserve His Last Three Points of Error*

In his last three points of error, Little argues that the trial court abused its discretion by admitting extraneous-offense evidence without limiting instructions, that the State engaged in

10

misconduct during jury argument, and that his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. We find these issues unpreserved.

### a. Extraneous-Offense Evidence

Before trial, an Article 38.37 hearing was held to determine the admissibility of allegations made by Amanda Rogers of extraneous offenses by Little. At the hearing, Rogers testified that she was friends with Little's daughter when she was twelve and that Little would tickle her during sleepovers at his home. Rogers said, "A couple of times he would touch me inappropriately and then say sorry, move on." Rogers clarified that Little touched her in the "chest area" over her clothing in a manner that made her uncomfortable. She testified that she had fallen asleep watching movies with Little's daughter, and "kind of woke up on [her] back across his lap . . . [and Little's] hand was in [her] waistband and his other hand was moving [her] shirt up to expose [her] chest." Rogers said that Little had pulled her bra up. The trial court found that Rogers's testimony was admissible under Article 38.37. Because "the State may . . . introduce evidence that the defendant has committed a separate sexual offense against another child 'for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant,'" "notwithstanding Rules 404 and 405 of the Texas Rules of Evidence," Little did not lodge a Rule 404(b) objection to Rogers's testimony or request a limiting instruction. *See Price v. State*, 594 S.W.3d 674, 679 (Tex. App.—Texarkana 2019, no pet.) (quoting TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1–2). He also did not object that Rogers's testimony should be excluded under Rule 403 of the Texas Rules of Evidence.

11

Little did file, based on Rule 404(b), a motion in limine regarding the State's possible introduction of an extraneous offense committed against Felicity Brown, because the State had not provided sufficient notice to use Brown as an Article 38.37 witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (requiring the State to give the defendant thirty days' notice of its intent to introduce an Article 38.37 extraneous-offense witness). After hearing the State's argument, the trial court ruled that it would take the Rule 404(b) objection under advisement. While Little made a Rule 403 objection to Brown's testimony, the trial court did not rule on the issue.

Little does not challenge the trial court's Article 38.37 ruling permitting Rogers's testimony. Instead, he argues that the trial court erred in admitting Rogers's testimony during the guilt/innocence phase of trial on Rule 403 and 404(b) grounds and should have provided a Rule 404(b) limiting instruction.[6] "As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context and" that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a).

Here, the record showed that, with respect to Rogers's testimony, Little did not make a Rule 403 or Rule 404(b) objection or secure a ruling on any such objection at the Article 38.37

---

[6]Little does not bring any complaint related to the jury charge.

12

hearing. Little also failed to lodge any objection either when Rogers testified before the jury in detail about the specific incident when Little woke her by touching her breasts and placing his hands in her waistband or when she testified, generally, that Little "would sometimes touch [her] on the chest or sometimes on the butt." As a result, Little did not preserve the Rule 403 or 404(b) complaint he now raises about Rogers's testimony on appeal.

Little's complaint regarding Brown is likewise unpreserved. The record shows that the trial court did not rule on Little's Rule 403 and 404(b) complaints about Brown's testimony, but instead chose to the take the matter under advisement "to see how it sets up throughout the trial." Brown did not testify during the guilt/innocence phase of trial. Instead, she testified, without any objection, during the punishment phase of trial that Little had "touched [her] boob" underneath her shirt one time. Because Little failed to secure a ruling on his evidentiary complaints and lodged no objection at trial to Brown's testimony, his Rule 403 and 404(b) complaints are unpreserved.

We conclude that Little failed to preserve the complaints he now raises on appeal about the admission of extraneous-offense evidence offered though Rogers and Brown. As a result, we overrule this point of error.

b.    *Prosecutorial Misconduct*

During closing argument, the State made the following statements on which Little's complaints of prosecutorial misconduct are based:

- "Jesus told us in the book of Matthew that anyone who causes a child to stumble should have a stone hung around their neck and be thrown in the ocean. It's your turn, you're holding the stone."

13

- "My husband's name is John and I thought to myself, if I walked in my house and John . . . is laid up on the couch under a blanket with a child that is not related to us, can y'all imagine? . . . And then don't even get me started on church. If you are a believer, like I am, you should be insulted to your core. I get up every Sunday with my husband and I take my little boy to church and I drop him off at Sunday School, and he participates in the youth activities. And predators like this are out cloaking themselves in the goodness that some of those people and those Christians have earned so that he could touch little kids. That's disgusting. It's despicable, and I'm offended. You should be offended."

- "If anything [Little] is woefully undercharged."

- "[The victim] has been having anxiety, nightmares, doesn't want to go out in public, withdrawn from her social activities because this pervert couldn't leave her alone."

- "This child has a reputation in the community for being a liar. Oh, you mean, you didn't tell somebody else that? No, produce that person. If this child made inconsistent statements a permissible use of the defendant's case in chief would be to put on a person to impeach her credibility and you did not see it."

- "I was thinking yesterday there can be no doubt after that child got off the stand."

Little argues that the State's comments referenced matters from her personal life that were not in evidence, interjected her personal opinion of Little's guilt and the victim's credibility, referenced religion to inflame jurors, made pleas to the jury's emotions and sympathy, and attempted to shift the burden of proof to the defendant. The State contends that any complaint regarding prosecutorial misconduct has not been preserved for our review. We agree.

"To preserve a prosecutorial misconduct complaint, a defendant must generally make a timely and specific objection, request an instruction to disregard the matter improperly placed before the jury, and move for a mistrial." *Johnson v. State*, 432 S.W.3d 552, 561 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995)

(per curiam); TEX. R. APP. P. 33.1(a)). This is because "[t]he right to a trial untainted by improper jury argument is forfeitable" and such "[r]ights are usually forfeited by a failure to exercise them." *Hernandez v. State*, 538 S.W.3d 619, 622–23 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App 1996); *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993)). As a result, "[f]ailure to insist upon a [forfeitable] right . . . results in the loss of the claim" since "[t]he trial judge 'has no duty to enforce forfeitable rights unless requested to do so.'" *Id.* (quoting *Marin*, 851 S.W.2d at 279).

Here, Little failed to object to any of the statements made by the State. "[A]n important consequence of [this] failure to petition enforcement of his forfeitable rights in the trial court [was] that no error attends failure to enforce them and none is presented for review on appeal." *Id.* (quoting *Marin*, 851 S.W.2d at 279). "Even an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." *Id.* at 622–23 (citing *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (even assuming prosecutor's argument was so egregious that instruction to disregard would be ineffectual, defendant "should have moved for a mistrial to preserve this error")).

We find that Little failed to preserve this point of error for our review. As a result, we overrule it.

### c. *Eighth Amendment Complaint*

"To preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Navarro v.*

15

*State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019, no pet.) (quoting *Russell v. State*, 341 S.W.3d 526, 527 (Tex. App.—Fort Worth 2011, no pet.)); *see Williams v. State*, 191 S.W.3d 242, 262 (Tex. App.—Austin 2006, no pet.) (a defendant must preserve an Eighth Amendment claim).

Little did not object to his sentence at trial, but he filed an amended motion for new trial raising the issue. However, Little did not request a hearing on his motion.[7] "A defendant is required to 'present' a motion to the trial court within ten days of filing it, unless the court, in its discretion, extends that time period." *Navarro*, 588 S.W.3d at 690–91 (citing TEX. R. APP. P. 21.6; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009)). "The Texas Court of Criminal Appeals 'consistently has held the filing of a motion for new trial alone is not sufficient to show "presentment"' and does not preserve an issue for appellate review in the absence of a showing that the trial court has seen the motion." *Id.* at 691 (quoting *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998) (citing *Colone v. State*, 573 S.W.3d 249, 259 (Tex. Crim. App. 2019) ("[T]he mere filing of a 'certificate of presentment' will not suffice to establish that a motion for new trial and request for a hearing has been presented to the trial court."); *Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd) ("[T]he mere filing of a motion for a new trial . . . will not preserve the error."))). "The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'" *Id.* (quoting *Stokes*, 277 S.W.3d at 21 (quoting *Carranza*, 960 S.W.2d at 78)); *see Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005)

---

[7]Little's original motion for new trial did not raise any Eighth Amendment issue.

("We have held that to present a motion in the context of a motion for new trial, the defendant must give the trial court *actual notice* that he timely filed a motion for new trial and requests a hearing on the motion for new trial.").

From our review of the appellate record, we find nothing demonstrating that Little's amended motion for new trial was presented to the trial court. The motion was electronically filed and faxed to the 102nd Judicial District Court. It was not hand-delivered, there is no notation on the motion indicating that the court saw it, and there is no docket entry showing that the motion was brought to the judge's attention. *See Navarro*, 588 S.W.3d at 691; *Hernandez v. State*, 84 S.W.3d 26, 33 (Tex. App.—Texarkana 2002, pet. ref'd). As a result, we find this point of error unpreserved and overrule it.

We affirm the trial court's judgments.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 19, 2020
Date Decided:       November 18, 2020

Do Not Publish

17